## In re the Matter of Alex M. SMITH, Petitioner

v.

## Darlene SMITH,[1] Respondent.

### No. CS02–03112.

Family Court of Delaware, Sussex County.

Submitted: Nov. 13, 2003.

Decided: Nov. 19, 2003.

Thomas E. Gay, Stumpf, Vickers & Sandy, P.A., Georgetown, for Alex M. Smith.

Darlene Smith, Pro Se, Rehoboth Beach.

HENRIKSEN, J.

This is the Court's decision following the property division hearing between the above-referenced parties which the Court held on November 13, 2003. Appearing for the hearing were A.M.S. ("husband"), represented by Thomas E. Gay, Esquire; and D.M.S. ("wife"), appearing *pro se.*

In making its decision, the Court considered all relevant factors, without regard to marital misconduct, including the

1. Pseudonyms have been assigned to the par-  ties to protect their identities.

following specific factors set forth in Title 13, Section 1513(a):

1. *The length of the marriage:* This is a relatively short marriage of slightly less than twenty-three (23) months, with the parties having married on October 28, 2000, separated on April 13, 2001, and divorced on September 18, 2002.

2. *Any prior marriage of the party:* Neither party was married previously.

3. *The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties:* Both of the parties are in good health. Husband is forty-two (42) years of age, is a manager at the Rusty Rudder earning approximately $49,500 per year, together with health insurance. Husband has some college education. Wife is twenty-eight (28) years of age, and is presently a convicted felon serving time for drug abuse. She has a two (2) year Associate Degree from college in Hotel and Restaurant Management. Prior to her drug abuse problems, she was capable of earning a salary of at least $30,000 per year as a manager at the Rusty Rudder. The Court refuses to give consideration to the downside of mother's current lack of employment where it is due through her own criminal activity which has led to her incarceration. Thus viewing the parties with husband's present income and attributing wife with a potential income of $30,000, the Court awards wife two (2) percentage points, noting that husband is in a better position to earn an income.

4. *Whether the property award is in lieu of or in addition to alimony:* This is not a factor. No claim was made for alimony.

5. *The opportunity of each for future acquisitions of capital assets and income:* The Court has already awarded wife two (2) percentage points based upon the income differentials of both of them, but without giving credit to wife for her lack of income at this time because of her wrongful activities which led to her unemployment. No other factors were presented that suggested either party had an advantage over the other in acquiring future assets or income.

6. *The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker, husband, or wife:* Husband submitted into evidence a list of household furnishings which he claimed wife took or disposed of. On husband's exhibit of household furnishings, he designated several items with an "X" indicating that these items were his prior to the marriage, and, therefore, non-marital property.

Wife disputed only three (3) of husband's non-marital designated items, arguing these items were instead acquired during the marriage, and, therefore, were marital. On two (2) of the three (3) items, the lazy boy recliner and the lazy boy sofa with end recliners, husband agreed with wife that they were marital. The parties disagreed, however, on the nature of a 1912 black walnut ladies slant-top desk. Wife was vague and speculative in her reasons for believing that this item was marital. Husband, on the other hand, was very specific about owning the desk before they were married, and, in fact, before he and wife knew each other. Having had the opportunity to hear the testimony

of each of the parties on this item, and observe their demeanor in the Court room, the Court finds by a preponderance of the evidence that the 1912 black walnut ladies slant-top desk is non-marital property having belonged to husband prior to the marriage.

Wife testified that she sold many of the non-marital items which belonged solely to husband, along with a 1950 dresser, having three (3) drawers and a mirror, designated as marital property, for a total sum of $850. By the Court's calculations, the total estimated value of the non-marital items was $5,149, this being the value suggested by husband. Neither party had receipts to prove or disprove these values. Wife testified that she was not capable of valuing these items. Husband testified that he established his values by adding ten percent (10%) to his original purchase price of the items, since the non-marital items were the types of items that would allegedly appreciate.

Section 1513(a) of Title 13 of the Delaware Code gives the Family Court the jurisdiction to "... *equitably divide, distribute and assign* marital (Emphasis added) *property between the parties ...*"

This Court does not have jurisdiction to make a division or an accounting of the non-marital items. The Court recommends that husband consider either a separate civil action or criminal action as to the disposition of husband's pre-marital items allegedly disposed of by wife for a sum which husband would certainly allege is considerably less than the value of these items.

On husband's list of household furnishings, there are also several marital household items. Wife acknowl-

edged that she received the blender ($15), some type of wine glasses, which the Court will ascribe as the four (4) Mikasa wine glasses ($40), the Martha Stewart dinette two (2) chairs and one (1) glass-top table ($120), the lazy boy recliners ($50) and the two (2) air conditioners ($250 + $150) for a total of $625. It also appears that wife placed in the garage certain of husband's pre-marital property, as well as certain items of marital property, with the items of marital property consisting of lawn furniture ($150), swinging love set ($150), two (2) glass-top end tables ($100), one (1) glass-top coffee table ($75), mosaic tile dining room table ($150) and four (4) dining room chairs ($60), for a total of $685. Although wife testified that she placed these items in the garage for husband, along with other items, husband testified that he went to the garage and was unable to find these items. Finding husband's testimony to be more credible, it appears that wife did not take proper precautions with these items. Noting that she sold the parties' 1950 dresser, three drawer with mirror, which husband valued at $395, this being marital property, along with several other allegedly pre-marital valuable antiques, all going for a total of $850, it also appears that wife sold the 1950 dresser for a value well below its actual value, and therefore dissipated the marital assets.

Wife also alleged that the home had been broken into, which caused several items to be ruined, which included a computer, printer, monitor and speakers, and also the lazy boy sofa with end recliners. Wife indicated that there is a police report on file with the Delaware State Police, with the break-in occurring sometime around September or October of 2002. Wife did

not have with her a copy of the report. Wife reported that no burglar was ever found. The Court has some concerns as to whether or not wife was truthful in her presentation of the facts concerning the loss or damage of these various items.

Based upon all of the foregoing as it relates to wife's treatment of marital property, the Court finds that wife dissipated marital assets, and therefore awards husband three percent (3%) in the overall division of property.

7. *The value of the property set apart to each party:* As already noted above, wife has received $625 in marital property, consisting of the blender, wine set, Martha Stewart dinette chairs and table, lazy boy recliner, and two (2) air conditioners. The parties also agreed that husband would have as his sole and separate property the 1998 Ford Explorer which was acquired by husband in his name alone just prior to the date of the marriage, and on which there is a debt which exceeds the value of the vehicle.

The parties agreed that this item was to be solely the husband's and not to be considered in the distribution of assets.

As to the items lost by wife, which the Court totaled above at a value of $685, and noting that there was no testimony as to the whereabouts of the Whirlpool dryer, with a value of $450, the Court makes no assignment of who has these assets. The Court has already accounted for wife's carelessness resulting in the loss of the above-mentioned items by crediting husband with three (3) percentage points as noted above.

8. *The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live:* The Court is accepting the parties as each having an ability to earn incomes as previously noted. The Court is giving no credit for wife's present incarceration and resulting lack of income which has occurred through her own fault.

9. *Whether the property was acquired by gift, except those gifts excluded by subsection (b)(1) of this section:* This is not a factor.

10. *The debts of the parties:* The Court reviewed the various debts of the parties. Although wife indicated that she had certain bills that she claimed she paid prior to trial, she never provided these in her pre-trial asset report. The Court has therefore barred her from presenting evidence as to debts at this late date. Husband also relinquished his claim for reimbursement on those expenses husband described as wedding bills. The Court finds, however, that the following bills in the following amounts were marital debts paid in full by husband: Verizon ($783.96); Credit Protection Association ($140.86); AT & T Long Distance ($131.77); Direct Merchants Bank[2] ($4,222.24); Associates National Bank Credit Card ($478.44); Lowe's dryer ($429.52); Comcast ($107.76); Waste Management ($71.59), for a total of $6,366.14.

11. *Tax consequences:* Neither party introduced any evidence regarding tax

---

**2.** Although husband alleged debt of $7,222.24 as of separation, both parties acknowledged that there was $3,000 on this credit card prior to their marriage.

consequences of the Court's possible division of property and distribution of debts.

■ After consideration of all of the factors of Title 13, Section 1513, as noted above, the Court comes to the conclusion that husband is entitled to fifty-one percent (51%) of the marital assets, and wife is entitled to forty-nine percent (49%) of the marital assets. Furthermore, husband is responsible for forty-nine percent (49%) of the marital debts which he has paid in full, and wife is responsible for fifty-one percent (51%) of the marital debts.

Of the marital assets accounted for, wife received assets totaling $625. In order for husband to have fifty-one percent (51%) of those assets, wife must pay husband the sum of $318.75. In addition, husband has paid marital debts totaling $6,366.14. Wife is responsible for fifty-one percent (51%) of those debts, and therefore must reimburse husband the additional amount of $3,246.73. In order to reach a fair and equitable division of the parties' marital property and debts, wife therefore shall pay husband the total sum of $3,565.48.

Because of wife's present incarceration, it is unlikely that she will be able to pay this amount at this time. Therefore, after thirty (30) days have transpired from the date of this Order, and if husband has not received this amount from wife, the Court will accept from husband a Motion and Form of Order to enter and transfer a judgment to the Superior Court in the State of Delaware on behalf of husband against wife in the amount of $3,565.48, together with interest at the legal rate from the date of this Order, together with the costs incurred in entering and collecting upon the judgment.

Finally, as to those items of non-marital property which husband alleges wife sold or otherwise disposed of, those items of property are beyond the jurisdiction of this Court, and husband may consider pursuing the issues raised by the loss of those items elsewhere.

**IT IS SO ORDERED.**